UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSE DIVISION

RAYMOND MATTHEWS,

    Plaintiff,

vs.                                              Case No.: 4:21cv307/MW/ZCB

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.
_____/

# REPORT AND RECOMMENDATION

This is a Social Security appeal under 42 U.S.C. § 405(g). Plaintiff Raymond Matthews seeks judicial review of the Commissioner's final decision denying his claim for supplemental security income. For the reasons below, this matter should be remanded for further proceedings because the Commissioner failed to adequately explain the decision to deny Plaintiff disability benefits.

## I.  Procedural History

Plaintiff applied for supplemental security income on January 14, 2020, alleging an onset date of July 13, 2019. (Tr. 15, 77, 181-85).[1] The Social Security

---

[1] Citations to the administrative record filed by the Commissioner are designated as "Tr." The page numbers cited herein are those found on the bottom right corner of each page of the transcript, rather than the page numbers that were assigned by the Court's electronic docketing system.

1

Administration (SSA) denied his application initially on March 20, 2020, and upon reconsideration on June 4, 2020. (Tr. 15, 64-76, 78-93). Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held telephonically on November 12, 2020. (Tr. 31-63). At the hearing, Plaintiff amended his alleged onset date to January 14, 2020. (Tr. 15, 35-36). On March 17, 2021, the ALJ issued a written decision finding Plaintiff has not been under a disability since his alleged onset date of January 14, 2020. (Tr. 15-25). The Appeals Council denied Plaintiff's request for review. (Tr. 1-6). The ALJ's decision stands as the final decision of the Commissioner, and Plaintiff has timely requested judicial review under 42 U.S.C. § 405(g).

## II.   The Legal Framework

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA has established a five-step sequential process to determine whether a claimant is disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If so, the Commissioner

will find that the claimant is not disabled. *Id.* Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner will determine the severity of the claimant's impairments or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). To be disabled, a claimant must have a "severe impairment," which is an impairment that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

Third, the Commissioner evaluates whether the claimant's severe impairment meets or equals an impairment listed in Appendix 1 to subpart P of Part 404 of the regulations (the "Listing"). 20 C.F.R. § 416.920(a)(4)(iii). Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). Fifth and finally, the Commissioner determines whether the claimant's residual functioning capacity, age, education, and past work experience prevent the performance of any other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

The claimant bears the burden of proof at the first four steps. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278 (11th Cir. 2020). If the claimant establishes the first four steps, then the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy that the claimant can perform. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th

Cir. 2021). If the Commissioner carries this burden, then the claimant must prove that he cannot perform the work identified by the Commissioner. *Goode*, 966 F.3d at 1279.

### III.  The ALJ's Decision

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of January 14, 2020. (Tr. 17, Finding 1). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "depressive disorder, bipolar disorder, hypertension, and asthma." (Tr. 17, Finding 2). Plaintiff also claimed to be suffering from degenerative joint disease, schizophrenia spectrum and other psychotic disorder, anxiety disorder, PTSD, and shortness of breath. (Tr. 18). The ALJ, however, determined that Plaintiff's schizophrenia spectrum and other psychotic disorder, anxiety disorder, PTSD, and shortness of breath were "not medically determinable (let alone 'severe') impairments." (*Id.*). The ALJ further concluded that "[t]here is no objective evidence of a formal diagnosis of these conditions." (*Id.*). As for degenerative joint disease, the ALJ concluded that it was a medically determinable impairment but not a "severe" one because it did not "cause[] more than minimal limitation in the claimant's ability to perform work-related activities." (*Id.*).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the

4

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18, Finding 3). The ALJ then found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> the claimant would be able to occasionally climb ramps or stairs, but never climb ropes, ladders or scaffolds. He would be able to tolerate occasional exposure to fumes, odors, dust, gases, or chemicals, and should avoid all exposure to extreme heat or cold temperatures. Mentally, the claimant is able to perform simple, routine tasks consistent with reasoning level 1 or 2 jobs with only occasional changes in the work setting. He can have frequent interaction with co-workers and supervisors, but only occasional interaction with the general public. He should have no driving as a job function.

(Tr. 20, Finding 4).[2] At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work as a styrofoam crate liner, order selector, and over edge sewer. (Tr. 24, Finding 5). At step five, the ALJ concluded there were jobs in significant numbers in the national economy that Plaintiff could perform. (Tr. 24, Finding 9). Relying on testimony by the Vocational Expert, the ALJ found that Plaintiff could work as a machine packer, laundry laborer, and warehouse worker. (Tr. 25). Based on these findings, the ALJ concluded that Plaintiff was not disabled. (Tr. 25, Finding 10).

---

[2] It appears that because of Plaintiff's age, education, and work experience, he would have been declared disabled under the medical-vocational guidelines if he were found to have a residual functioning capacity of sedentary or light work. (Tr. 59; Doc. 18 at 3).

5

## IV.  Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  I is not this Court's role to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (cleaned up).  Indeed, the Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C § 405(g) (cleaned up); *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998).

The substantial evidence standard is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  It requires "more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (internal quotations omitted).  Put another way, it requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal quotation omitted).  And, "[i]f the Commissioner's decision is supported by substantial evidence, we must affirm, even if the proof preponderates against it." *Phillips*, 357 F.3d at 1240 n.8 (internal quotations omitted).  If, however, the ALJ's conclusion is unsupported by analysis

6

and explanation, then the matter should be remanded for further proceedings. *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013)

## V. Discussion

On appeal, Plaintiff argues the ALJ erred by not recognizing his shortness of breath, anxiety disorder, PTSD, and degenerative arthritis as severe impairments. Plaintiff further argues that even if the ALJ was correct in finding that these conditions were not severe impairments, the ALJ failed to consider these conditions in the residual functional capacity assessment. As explained below, the Court agrees that the ALJ erred by failing to explain the conclusion that Plaintiff's shortness of breath, anxiety, and PTSD were not medically determinable impairments.

The second step in the SSA's sequential evaluation process requires the ALJ to determine whether the claimant suffers from a "severe impairment." 20 C.F.R. § 416.920(a)(4)(ii); *see also* 20 C.F.R. § 416.920(c). To be "severe," an impairment must first be "medically determinable." To be medically determinable, an "impairment[] must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921. An impairment cannot be deemed medically determinable based on reported symptoms alone. 20 C.F.R. § 416.929(a)-(b). The evidence that may establish a medically determinable impairment should come from "acceptable medical sources," such as physicians and psychologists.

7

*Anteau v. Comm'r of Soc. Sec.*, 708 F. App'x 611, 613 (11th Cir. 2017). If an ALJ concludes that an impairment is not medically determinable, then the ALJ must explain that conclusion. Absent such an explanation, a court "is unable to exercise meaningful judicial review." *Carter v. Kijakazi*, No. 5:20-cv-100, 2022 WL 509359, at *5 (S.D. Ga. Feb. 1, 2022). The Eleventh Circuit has held that an ALJ's failure to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Sanchez*, 507 F. App'x at 856. The "need for an explanation of the reasoning behind the ALJ's conclusions" is particularly acute "[w]here there is conflicting probative evidence in the record." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). If an ALJ fails to explain the conclusion that a claimant's impairments are not medically determinable, then remand is warranted. *See, e.g.*, *Nowaczyk v. Kijakazi*, No. 5:21-CV-63, 2022 WL 3031230, at *6 (N.D. Fla. July 12, 2022) (remanding because ALJ failed to articulate basis for finding impairment non-medically determinable); *Moore v. Saul*, No. 4:18-CV-01131, 2020 WL 1308404, at *4 (N.D. Ala. Mar. 19, 2020) (same); *John B. v. Kijakazi*, No. 1:20-CV-1310, 2022 WL 813829, at *5 (N.D.N.Y. Mar. 16, 2022) (same); *Santiago v. Saul*, No3:19cv1026, 2020 WL 5511651, at *2 (D. Conn. Sept. 14, 2020) (same).

In the current case, the ALJ failed to adequately explain her conclusion that Plaintiff's anxiety disorder, PTSD, and shortness of breath were "not medically

determinable." (Tr. 18). The ALJ's conclusion is supported by no analysis or discussion of Plaintiff's voluminous medical records. Instead, all that the ALJ says is "[t]here is no objective evidence of a formal diagnosis of these conditions." (*Id.*). Not only is that statement unexplained, but it is also inconsistent with the medical record. The medical record appears to show that Plaintiff has been treated for (and diagnosed) with all three conditions. (*See, e.g.*, Tr. 418, 422, 425, 678, 669, 1238, 1041-43, 1067).

Looking first to shortness of breath, Plaintiff was admitted to the hospital twice (for multiday stays) in 2020 after experiencing severe shortness of breath. The records related to those hospitalizations show that Plaintiff was in "acute respiratory failure" and was treated for "chronic obstructive pulmonary disease [COPD]" with "exacerbation." (Tr. 1041-43).[3] His chief complaint at the time of his admission on August 20, 2020, was "shortness of breath," and the treatment notes state that he was tachypneic [breathing rapidly][4], dyspneic [out of breath][5], and speaking short sentences. (Tr. 1050). A chest x-ray showed "[c]hronic appearing interstitial changes . . . as well as mild peribronchial thickening." (Tr. 1067). The "Diagnosis, Assessment & Plan" portion of the medical record states in pertinent part: "1.

---

[3] The medical record also contains a reference in 2016 to a diagnosis of COPD while Plaintiff was incarcerated at the Bureau of Prisons, and it states that Plaintiff's COPD was in remission at that time. (Tr. 605).
[4] "Tachypnea," *Stedman's Medical Dictionary*, Westlaw 895370 (Nov. 2014).
[5] "Dyspneic," *Stedman's Medical Dictionary*, Westlaw 274440 (Nov. 2014).

Respiratory distress; 2. Acute respiratory failure with hypercapnia[6]; 3. COPD exacerbation." (*Id*.). And, the hospital discharge summary identifies one of the admission diagnoses as "[a]cute COPD exacerbation." (Tr. 1042). Moreover, the records from the Leon County EMS show that when EMTs encountered Plaintiff his lungs were "clear and equal but diminished all fields," and his oxygen saturation level was 86%.[7] (Tr. 1132).

The medical record also includes multiple references to Plaintiff suffering from—and receiving treatment for—anxiety disorder and PTSD. (*See, e.g.*, Tr. 860, 861, 884, 1041, 1042, 1117, 1161, 1236, 1237, 1238). By way of example, records from Bond Community Health state that Plaintiff has "Bipolar I disorder," "Posttraumatic stress disorder," and "Generalized anxiety disorder." (Tr. 1238). And records from Capital Regional Medical Center include a diagnosis of "anxiety." (Tr. 1042). Records from Capital Regional Medical Center also show that Plaintiff was prescribed clonazepam to treat his anxiety. (Tr. 1117, 1161).

---

[6]Hypercapnia refers to heightened carbon dioxide in the blood stream. "Hypercapnia," *Stedman's Medical Dictionary*, Westlaw 422450 (Nov. 2014).

[7] Oxygen saturation is "[t]he percentage ratio of the oxygen attached to hemoglobin compared to that which it could carry." J. Stanley McQuade, *Reading Medical Records* 337 (2nd ed. 2012). The oxygen saturation of a healthy individual is generally between 95% and 100%, but sometimes can be lower in people with lung problems. *Pulse Oximeter Accuracy and Limitations: FDA Safety Communication*, U.S. Food & Drug Admin., https://www.fda.gov/medical-devices/safety-communications/pulse-oximeter-accuracy-and-limitations-fda-safety-communication (last updated June 21, 2022).

To summarize, the medical record shows that Plaintiff suffered from shortness of breath, COPD, and respiratory-related issues that were severe enough to warrant hospitalization on two occasions. Likewise, the medical record shows that Plaintiff was treated for, and diagnosed with, anxiety and PTSD. Thus, the ALJ's unexplained conclusion that these impairments were not "medically determinable" is problematic and hampers this Court's ability to review the ALJ's ultimate conclusion regarding Plaintiff's disability claim.[8] That is so because "bare conclusion[s] [are] beyond meaningful judicial review." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (remanding because the ALJ's opinion was conclusory and lacking sufficient explanation).

If the ALJ believed that the impairments are not medically determinable, then the ALJ should have supported that belief with discussion of the medical record. The ALJ should have explained why the information from the medical record discussed above was insufficient to satisfy the medically determinable standard. Remand is warranted here because the ALJ's bare conclusion that Plaintiff's shortness of breath, anxiety, and PTSD were not medically determinable is insufficient to allow this Court to conduct a meaningful review of the ALJ's

---

[8] Because the ALJ concluded that these impairments were not medically determinable, they were not able to be considered when determining Plaintiff's residual functioning capacity. 20 C.F.R. § 416.945(a)(2) (stating that SSA will only consider "medically determinable impairments" in assessing residual functioning capacity).

decision. *See Carter*, 2022 WL 509359, at *5 (stating that if "the ALJ makes a finding Plaintiff does not have a medically determinable impairment . . . he must provide an adequate explanation of his reasons for doing so. Without such guidance from the ALJ, the Court is unable to exercise meaningful judicial review."); *see also Ruth B. v. Kijakazi*, No. 7:20cv00457, 2021 WL 8527625, at *5 (W.D. Va. Oct. 29, 2021) (remanding because "the ALJ did not adequately explain her determination that [claimant's] cognitive impairment was not a medically determinable impairment"); *see also Black v. Berryhill*, No. 2:17-cv-00153, 2018 WL 1472525, at *6 (D. Utah Mar. 7, 2018) (remanding ALJ's decision finding impairment not medically determinable because "the ALJ's decision does not allow the undersigned the opportunity to assess whether the ALJ considered relevant evidence, whether the relevant evidence supports the ALJ's decision, or whether he applied the correct standards to arrive at that conclusion"); *Mizell v. Colvin*, No. 13-1206, 2014 WL 6453592, at *4 (D. Kan. Nov. 17, 2014) (holding that "[r]emand is necessary for the Commissioner to explain the bases for her decision" that claimant's impairment was not medically determinable).

On remand, the ALJ should evaluate whether the medical record and Plaintiff's hearing testimony establish that his shortness of breath, anxiety, and PTSD are "medically determinable" impairments.[9] If the ALJ again determines they

---

[9] As previously mentioned, once the ALJ determined that Plaintiff's shortness of

12

are not, then the ALJ must fully explain that conclusion and discuss how it is consistent with other evidence in the record. If the ALJ determines that they are medically determinable,[10] then she should proceed through the remaining steps of the sequential analysis to determine if Plaintiff qualifies for disability benefits.

## VI. Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS**:

---

breath, PTSD, and anxiety were not medically determinable, the ALJ could not consider them in formulating Plaintiff's residual functioning capacity. *See* 20 C.F.R. § 416.945(a)(2) (stating that SSA will only consider "medically determinable impairments" in assessing residual functioning capacity). Thus, the Court cannot say that the ALJ's error did not affect the remainder of the ALJ's opinion. Put another way, the harmless error doctrine does not apply to the ALJ's failure to explain why the impairments were not medically determinable. Courts across the country have reached the same conclusion. *See Nowaczyk*, 2022 WL 3031230, at *5 n.5 (citing cases); *see also Penny Lou v. Comm'r of Soc. Sec.*, No. 2:18-cv-213, 2019 WL 5078603, at *8 (D. Vt. Oct. 10, 2019) (explaining that "the step-two harmless error doctrine is inapplicable to a determination that an impairment is not medically determinable"); *Keller v. Colvin*, No. 16-CV-6399, 2017 WL 4112024, at *14 (W.D.N.Y. Sept. 18, 2017) ("[T]he ALJ's error in this case stemmed not from a severity conclusion, but from the conclusion that [claimant's condition] was not *a medically determinable impairment*. The distinction is significant because the step two harmless error doctrine is inapplicable to a determination that an impairment is not medically determinable.") (cleaned up); *Ann S. v. Kijakazi*, No. 2:20-cv-00841, 2022 WL 204596, at *5 (D. Utah Jan. 24, 2022) (refusing to apply harmless error analysis to ALJ's failure to explain determination that impairment was not "medically determinable").

[10] To be clear, the Court has not concluded that the impairments are in fact medically determinable. The problem here is the lack of explanation and the ALJ's failure to thoroughly engage with the medical record and discuss how her finding that the impairments were not medically determinable is consistent with the information in that record.

1. **REVERSING** the Commissioner's decision and **REMANDING** this action to the Commissioner for further proceedings consistent with this opinion under sentence four of 42 U.S.C. § 405(g); and

2. Directing the Clerk of Court to close the case file.

At Pensacola, Florida, this 30th day of August 2022.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

### NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive motions.** *See* **N.D. Fla. Loc. R. 72.2;** *see also* **28 U.S.C. § 636(b)(1)(B)-(C); Fed. R. Civ. P. 72(b).**

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**